IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBOTICVISIONTECH, INC.<br><br>        Plaintiff,<br><br>   v.<br><br>ABB INC.<br><br>        Defendant. | C.A. No. 1:22-cv-01257 GBW |

**DEFENDANT ABB INC.'S OPENING LETTER BRIEF IN SUPPORT OF ITS
MOTION TO STRIKE PLAINTIFF'S
<u>IDENTIFICATION OF ACCUSED PRODUCTS AND TRADE SECRETS</u>**

*Of Counsel:*

Gregory S. Bombard, Esq.
GREENBERG Traurig
One International Place
Boston, MA 02110
Phone: (617) 310-6027
Fax: (617) 310-6001
Email: gregory.bombard@gtlaw.com

Andrew Sommer, Esq.
GREENBERG TRAURIG
1750 Tysons Boulevard
Suite 1000
McLean, VA 22102
Tel: (703) 749-1370
Fax: (703) 749-1301
Email: sommera@gtlaw.com

Dated:  May 8, 2023

Benjamin J. Schladweiler (#4601)
GREENBERG TRAURIG, LLP
222 Delaware Ave., Suite 1600
Wilmington, DE 19801
Phone: (302) 661-7000
Fax: (302) 661-7360
Email:  schladweilerb@gtlaw.com,

*Counsel for Defendant ABB Inc.*

Dear Judge Williams:

Defendant ABB, Inc. ("ABB") hereby moves to strike Plaintiff RoboticVisionTech Inc.'s ("RVT") March 31, 2023 Identification of Accused Products and Trade Secrets (**Ex. A**) because the disclosures improperly expand the scope of the accused products well beyond the product identified in the Complaint, and do not describe the purported trade secrets with "particularity." (D.I. 27 ¶ 3(a)).

1. **Expansion of Accused Products from "FlexVision" to "robotic vision technology"**

The only product accused of infringement in RVT's Complaint is FlexVision.

- RVT accuses "ABB's *FlexVision product*" of infringing the '755 patent, which RVT alleges is "directed to '[a] method of *three-dimensional* handling of an object by a robot us[ing] a tool and one camera mounted on the robot and at least six target features which are normal features of the object.'" (D.I. 1, ¶¶ 143-144).

- RVT accuses "ABB's *FlexVision product*" of infringing the '814 patent, which RVT alleges "covers a system and method for '*three-dimensional* pose estimation for target objects, using one or more images sensors to acquire images of the target object at one or more positions.'" (*Id.*, ¶¶ 151-152).

- RVT accuses "ABB's *FlexVision product*" of infringing the '237 patent, which RVT alleges "covers '[a] method of *three-dimensional* object location and guidance to allow robotic manipulation of an object with variable position and orientation using a sensor array which is a collection of one or more sensors capable of forming a single image.'" (*Id.*, ¶¶ 160-161).

No other ABB products or class of products is identified. Nor is there an allegation that products similar to FlexVision infringe.

RVT's March 31 Identification of Accused Products expands the scope of these accusations by alleging that "the accused products in this case are *ABB's robotic vision technology*." (**Ex. A**). This is not only broader than the "FlexVision product" identified in the Complaint, but also significantly broader that the "*three-dimensional*" "pose" and "object location" technology allegedly covered by the patents-in-suit. This class of products is so broad that it includes *two-dimensional* vision technology, and even bar code readers, that have no possible relevance to this case.[1] This is improper because the Complaint sets forth the cause of

---

[1] In follow-on correspondence, RVT claimed that it did "not see how the plain meaning of 'robotic vision technology' would cover the use of bar-code readers," but failed to clarify what this purported "plain meaning" was and what is included in it. (**Ex. E**). Further confusing the issue, RVT claimed that ABB's Integrated Vision product "may" be included in its broad definition (**Ex. B**), even though the publicly available product manual and specification for Integrated Vision make clear that it is a *2D* vision product, and thus unrelated to the *3D* vision technology that the

action and defines the scope of discovery.  *See Adobe Sys. Inc. v. Macromedia, Inc.*, No. 00-743-JJF, slip op. at 4 (D. Del. Nov. 9, 2001) (**Ex. F**) (products "not named in the Complaint . . . are beyond the scope of discoverable materials").  RVT's disclosures are also deficient because they fail to "specifically identify" which "asserted patent(s)" the broad swath of products "allegedly infringe." DELAWARE DEFAULT STANDARD FOR DISCOVERY, ¶ 4(a).

RVT tries to justify its expansion of products at issue by claiming it wants full discovery on "***all the products ABB sells*** and their functionality" so it can then determine what products to accuse.  (**Ex. E**).  RVT also admits that its disclosures may be "too broad" by offering to "amend [its] positions as appropriate" if it turns out RVT had no Rule 23(g) basis for its allegations.  (**Ex. B**).  RVT's approach is backwards.  "The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has a basis for a claim."  *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d, 1318, 1327 (Fed. Cir. 1990) (emphasis in original); *see also Caliper Tech. Corp. v. Molecular Devices Corp.*, 213 F.R.D. 555, 558 (N.D. Cal. 2003) ("A party may not obtain documents in order to discover whether it has a cause of action."); FED. R. CIV. P. 26(g) (by signing a "disclosure," a party "certifies" it made a "reasonable inquiry" the discovery is warranted).

To seek discovery into unaccused products, a plaintiff must first articulate, "in a focused, particularized manner, the characteristics or components that the unaccused products must have in order to suggest that they may infringe the patents-in-suit."  *Invensas Corp. v. Renesas Elecs. Corp.*, 287 F.R.D. 273, 282 (D. Del. 2012) (finding that plaintiff did not explain how unaccused products were reasonably similar to accused products); *see also Tesseron, Ltd. v. R.R. Donnelley & Sons Co.*, 2007 WL 2034286 (N.D. Ohio July 10, 2007) (a party seeking discovery into unaccused products "must first . . . identify with specificity the component, characteristic, or element of the product or system that the claimant[] believes will render the product or system infringing").  RVT's disclosure of "robotic vision technology" is untethered from its 3D machine vision patents, and thus fails to describe the scope of what is accused of infringement in the requisite "focused, particularized manner."  *Invesas*, 287 F.R.D. at 282.

The *Tesseron* case, which Judge Burke relied on in *Invensas* as setting the "boundar[y] of the relevance inquiry," is instructive.  *Id.* at 280.  In that case, plaintiff sought discovery into all of defendant's "variable data printing systems," which, like RVT's disclosure of "robotic vision technology," swept in "a broad spectrum of technology" and "include[d] many systems that cannot conceivably infringe on any of [plaintiff's] patents."  *Tesseron*, 2007 WL 2034286, at *11.  The court refused to order discovery into the unaccused products because, as RVT did here, the plaintiff failed to specify "the component, characteristic, or element of the system that must, in its view, exist for infringement to occur."  *Id*. at 12; *see also Honeywell Int'l Inc. v. Audiovox Commc'ns Corp*., 2005 WL 3988905, at *1 n.2 (D. Del. Oct. 7, 2005) (plaintiff's disclosure that "all [of defendant's] cellular phones infringe," failed to "specifically identify [the] accused products").  Like the disclosures in *Tesseron* and *Honeywell*, RVT's disclosure of "robotic vision technology" is so broad it includes a "vast universe of technology far removed from anything [RVT] can credibly claim as infringing its patents" and RVT does not provide a "basis for believing that [the unaccused products included in its broad description] are infringing."  *Tesseron*, 2007 WL

---

patents-in-suit are allegedly directed to.  (*See* **Ex. C** at 9-10 (Integrated Vision is used "for ***2D*** part location"); **Ex. D** ("The Integrated Vision system works in ***2D***."); D.I. 1, ¶¶ 144, 152, 161).

2034286, at *5; *Honeywell*, 2005 WL 3988905, at *1 n.2.  Since RVT does not come close to justifying the breadth it seeks, its disclosures should be stricken.

### 2. RVT fails to identify its trade secrets with particularity

The Court should strike RVT's disclosure of its purported secrets because that disclosure fails to conform to the parties' agreement or Third Circuit's precedent.  The Parties agreed that RVT would identify its trade secrets "with particularity" at the start of fact discovery (D.I. 27 ¶ 3(a)), but RVT's disclosures simply parrot the descriptions of five categories of purported trade secrets contained in RVT's Complaint.  The categorical descriptions in RVT's disclosure do nothing to clarify the issues involved in the dispute.

The Third Circuit applies "the 'reasonable particularity' standard to determine whether a party alleging a claim for misappropriation of trade secrets has sufficiently identified its trade secrets before it may compel discovery of its adversary's trade secrets." *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 383 n. 22 (3d Cir. 2021).  This disclosure requirement is "intended to clarify the issues involved in the dispute so as to assure that there will be no disclosure of an adversary litigant's trade secrets beyond what is necessary for the prosecution of the litigation" and "to ensure that defendants are put on notice of the claimed trade secrets early in the litigation, preventing defendants from being subject to unfair surprise on the eve of trial." *SmithKline Beecham Pharm. Co. v. Merck & Co., Inc.*, 766 A.2d 442, 447–48 (Del. 2000); *see also Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 755 F. Supp. 635, 637 (D. Del. 1991) ("disclosure of plaintiff's trade secrets prior to discovery of defendant may be necessary to enable the defendant and ultimately the Court to ascertain the relevance of plaintiff's discovery").

RVT's Complaint identifies five categories of purported secrets, but those categorical descriptions are not described with requisite particularity.  (D.I. 1 at ¶¶ 58-65). While RVT's descriptions use many words, they only describe the problem RVT's source code purportedly solves, not the allegedly secret solution.  For example, for the category "Feature qualification," RVT alleges that its approach uses "certain thresholds" without identifying what the thresholds are; says that it "runs statistical calculations" without identifying what the calculations are; alleges that RVT's software will discard features that it detects are "not co-planar, to an optimized degree," but fails to identify *how* the software does so.  (*Id.* ¶ 58).  The other four categories are similarly vague.  (*Id.* ¶¶ 59-65).  These public statements do not—and cannot—convey the alleged secrets with any degree of particularity because they are public.

There is a simple fix.  RVT alleges that the five categories of purported trade secrets are embodied in the source code for eVF software.  (D.I. 1 ¶ 57).  RVT should simply identify where the specific lines of code that it alleges embody the five alleged categories of secrets are found in its source code.  Other courts have ordered plaintiffs to do the same. *See e.g. Moog Inc. v. Skyryse, Inc.*, 2022 WL 16852364, at *2 (W.D.N.Y. July 22, 2022) ("Were the plaintiff alleges misappropriation of source code, it should identify the specific lines of code or programs claimed to be secret.").  RVT could easily do this, but it refuses this common-sense proposal.  RVT argues it should be able to wait until after fact discovery *closes* to identify the source code it claims embodies its trade secrets.  Identifying the alleged trade secrets after fact discovery would defeat the purpose of guiding the scope of discovery and would open the door to RVT sandbagging ABB after discovery closes.  For these reasons, RVT's deficient identification should be stricken.

The Honorable Gregory B. Williams
May 8, 2023
Page 4

                                        Respectfully,

                                        */s/ Benjamin J. Schladweiler*

                                        Benjamin J. Schladweiler

cc:      All Counsel of Record via CM/ECF

Case 1:22-cv-01257-GBW   Document 31   Filed 05/08/23   Page 5 of 5 PageID #: 575