IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBOTICVISIONTECH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1257-GBW |
| | ) | |
| ABB INC., | ) | |
| | ) | |
| Defendant. | ) | |

**RVT'S RESPONSE IN OPPOSITION TO ABB'S MOTION TO STRIKE PLAINTIFF'S
IDENTIFICATION OF ACCUSED PRODUCTS AND TRADE SECRETS**

OF COUNSEL:
J.C. Rozendaal
Michael E. Joffre
William H. Milliken
Kristina Caggiano Kelly
Anna G. Phillips
William Rodenberg
STERNE, KESSLER, GOLDSTEIN & FOX PLLC
1100 New York Ave, NW
Suite 600
Washington, DC 20005
(202) 371-2600

Dated: May 15, 2023

John W. Shaw (No. 3362)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiff*

Dear Judge Williams,

The Court should deny ABB's Motion to Strike RVT's Identification of Accused Products and Trade Secrets (D.I. 30, 31). ABB's arguments fail procedurally and substantively. As to procedure, ABB's motion is untimely and seeks relief unavailable under Rule 12(f) (the purported basis for the motion, D.I. 30). As to substance, RVT's disclosures do not expand the scope of accused products beyond the functionality identified in the complaint, and they describe the asserted trade secrets with particularity. D.I. 27 ¶ 3(a). ABB is on notice of RVT's accusations; it cannot credibly assert otherwise.

## I.      Background

Before the events that form the basis for RVT's complaint, ABB did not have 3D robotic vision technology of its own. Instead, it licensed RVT's software, called "eVF." D.I. 1 ¶¶ 11–14. After that license expired, ABB engaged RVT in years of misdirection and subterfuge, which involved poaching RVT's head software developer and collecting technical information from RVT under the ruse of a promised partnership. *Id.* at ¶¶ 17–33. ABB used this intelligence to develop and launch its own competing 3D robotic vision product, "FlexVision." *Id.* at ¶ 35.

Due to confidentiality in the robot-vision industry, RVT had no insight into the inner workings of FlexVision and no way of investigating whether it was legitimately developed— until recently. *Id.* In 2021, RVT obtained a confidential manual for FlexVision. A review of that manual made clear that FlexVision is a copy of eVF, which embodies RVT's patented inventions, trade secrets, and copyrighted source code. *Id.* at ¶¶ 36–37. This lawsuit followed.

## II.     ABB's motion is procedurally improper.

As an initial matter, ABB's motion to strike is procedurally improper, as ABB seeks relief that Rule 12(f) does not allow. Rule 12(f) motions may be directed only to "pleadings" as defined by Rule 7(a). *Vidra v. Hertz Corp.*, 2018 WL 4853311, at *2 (E.D. Pa. Oct. 4, 2018). An initial disclosure is not a pleading under Rule 7(a). Moreover, ABB appears to be using this motion to dismiss from this litigation (i) all accused products other than those ABB markets as "FlexVision"; and (ii) all RVT's trade-secret claims. A motion to strike is "neither an authorized nor a proper way to procure the dismissal of all or part of a complaint." Wright & Miller § 1380 (3d ed.) (collecting cases); *see Jordan v. Cicchi*, 2014 WL 2013385, at *1 (D.N.J. May 16, 2014). Indeed, ABB *already filed* a motion to dismiss, *see* D.I. 12, and it did not challenge the particularity of RVT's trade secrets. A motion to strike is not an end-run around that choice.

Even if the motion was fairly filed under Rule 12(b), ABB's motion is untimely. Such a motion must be filed within 21 days after service of the "pleading" to which the motion is directed. Fed. R. Civ. P. 12(f)(2). RVT filed its complaint months ago and served its initial disclosures on March 31. ABB did not file this motion until May 8—far longer than the deadline for response or 21 days after service of either document.

## III.    ABB's arguments fail on the merits.

Because the end result of ABB's request would be to preclude RVT from maintaining certain portions of its case, the Court should—to the extent it even reaches the merits—evaluate ABB's motion under the *Pennypack* standard. *Pennypack* holds that the exclusion of evidence as a penalty for improper or untimely disclosure is an "extreme sanction, not normally to be

1

imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977) (cleaned up). No such conduct has occurred here—not even close.

### A.   The language "ABB's robotic vision technology" used in RVT's initial disclosures is a functional description of "ABB's FlexVision product" as accused in the complaint.

RVT's complaint accuses ABB's robotic vision product of infringing RVT's robotic-vision patents and its copyrighted eVF source code and of misappropriating RVT's trade-secret software functionality. The complaint labeled ABB's accused functionality as "FlexVision;" it did not limit the litigation to a single product by that name. Based on RVT's information and belief to date, *all* of ABB's robotic vision technology is built upon some version of the FlexVision 3D source code and functionality, and the complaint's extensive and detailed accusations make clear that it is the underlying robotic vision software functionality that is accused, whether or not ABB uses the brand name "FlexVision" to market that product. *See* D.I. 1 ¶ 72 ("ABB continues to create *new versions* of the FlexVision product") (emphasis added); *id.* at ¶¶ 74–75, 78, 98 (describing the underlying FlexVision functionality at issue).

RVT's Rule 26 initial disclosures simply note what is accused: the robotic vision technology embodied in ABB's FlexVision product. This reasonably includes all versions of the FlexVision 3D software, all robots that are used or compatible with that software, and any other iteration of that same core FlexVision functionality (even if the brand name of the product is something other than "FlexVision"). *See* ABB Ltr. Ex. A. "ABB's FlexVision product" in the complaint and "ABB's robotic vision technology" in RVT's initial disclosures are coextensive in scope: the latter is a functional description of the former.

ABB objects that RVT's initial disclosures broaden the scope of the accused products by suggesting that "robotic vision technology" could somehow read on "bar-code readers." ABB Ltr. at 3. This straw-man argument fails. No reasonable reading of "robotic vision technology" would implicate traditional bar-code readers, which are not robots and do not use the kind of camera system referred to as "vision" in this industry. Instead, what ABB appears to be dismissing as "bar-code readers" is a robotic vision system that *includes* FlexVision functionality *among other applications* like a bar-code reader. *See* ABB Ltr. at 1 (citing ABB Ex. C at 10–11). RVT clarified in written correspondence that its use of the words "robotic vision technology" describes robots that have a vision system with underlying FlexVision functionality. *See* ABB Ex. E. RVT provided two examples of products that RVT believes contain infringing FlexVision functionality, even if ABB does not call them "FlexVision" in its literature: ABB's Integrated Vision and FlexLoader products. The scope of the accused products is clear.

ABB now asserts that its Integrated Vision product is a two-dimensional vision product, which ABB contends would not be covered by RVT's patents on methods of "three-dimensional" object location. *See* ABB Ltr. at 1 n.1 (citing ABB Ex. C). That is a non-infringement argument. If ABB thinks some of its accused products do not infringe, it can say so in response to RVT's infringement contentions. In any event, the very manual that ABB cites *confirms* that Integrated Vision extends beyond 2D functionality:



ABB Ex. D at 70 (showing a three-dimensional (x, y, z) coordinate system for a camera (D) and a robot (C)). In short, ABB's non-infringement argument is not only procedurally misplaced; it is substantively contradicted by the very evidence ABB relies on.

ABB next resorts to mischaracterizing RVT's discovery requests. *See* ABB Ltr. at 2. ABB asserts that RVT has requested "full discovery on '*all the products ABB sells* and their functionality.'" *Id.* That is incorrect. RVT served interrogatories asking ABB to *list* all its products relating to machine vision technology and their functionality, so RVT may use that list to identify—by product name rather than by functional description—which products are accused and which are not. *See* ABB Ex. E; RVT's ROGs 1, 8. These interrogatories can thus eliminate any purported confusion ABB has over the scope of the accused products in this case. Yet ABB has, without providing any basis, refused to answer them. ABB's purported inability to understand what products RVT has accused of infringement is a problem of its own making.

The proposition that parties are not entitled to full discovery on un-accused products, *see* ABB Ltr. at 2 (collecting cases), is thus of no help to ABB. RVT has not requested discovery on un-accused products. Rather, RVT seeks discovery on ABB's FlexVision product and all products "reasonably similar" in core functionality consistent with *Invensas Corp. v. Renesas Elecs. Corp.*, 287 F.R.D. 273, 282 (D. Del. 2012). And RVT's additional request for a *listing* of all ABB machine vision products will allow RVT to determine what names those "reasonably similar" products are sold under.

Finally, RVT has not admitted that its current disclosures are "too broad." *Contra* ABB Ltr. at 2. Rather, RVT simply offered to revisit the issue *if*, upon ABB providing the requested product list and upon RVT identifying the accused products by product name, ABB still believes the scope of the accused products exceeds the scope of the allegations in the complaint. Until then, ABB's motion should be denied, and it should provide full answers to RVT's interrogatories and documents requests.

3

**B.     RVT has identified its trade secrets with particularity.**

ABB moved to dismiss RVT's trade-secret claims as time-barred. D.I. 12. That motion is pending. ABB did not move to dismiss (or move for a more definite statement) based on any alleged failure to identify the asserted trade secrets with particularity.

As ABB admits, the purpose of requiring a plaintiff to identify its trade secrets with particularity is to clarify the issues involved in the dispute so as to assure that there will be no disclosure of an adversary litigant's trade secrets beyond what is necessary for the prosecution of the litigation. *See Engelhard Corp. v. Savin Corp.*, 505 A.2d 30, 33 (Del. Del. Ch. 1986) (requiring further identification where plaintiff described trade secrets at level of "liquid toner" and related "Engelhard catalyst" technology). It is not a rule- or statutorily-mandated requirement akin to heightened pleadings for fraud or securities litigation.

Disclosure of ABB's trade secrets "beyond what is necessary" is not a concern in this litigation. RVT has accused ABB's FlexVision source code of infringing RVT's copyrights and patents, so the source code will be disclosed regardless of the outcome of this motion. Indeed, ABB has not identified any discovery that would be eliminated by requiring RVT to provide additional detail in identifying  of its trade secrets. *Contra* ABB Ltr. at 3.

ABB argues that RVT's descriptions of its trade secrets use "many words" but only describe the *problem* that the source code solves, rather than the *solution*. ABB Ltr. at 3. ABB cites no authority for the proposition that this is insufficient, and the law is otherwise. *See, e.g.*, *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 907 (3d Cir. 2021) (allegations that trade secrets consisted of "the variables that affect the development of its microsphere products, including the data, peptide-specific release profile, and other discoveries associated with those variables" provided sufficient particularity); *Illumina, Inc. v. Guardant Health, Inc.*, 2023 WL 1407716, at *9 (D. Del. Jan. 31, 2023) (allegations of a "category of trade secrets … relating to using 'methods for grouping sequence reads into families and then collapsing those reads into a single consensus sequence from the sequence reads in the families'" provided sufficient particularity), *report and recommendation adopted*, 2023 WL 2867219 (D. Del. Mar. 29, 2023); *Danieli Corp. v. SMS Grp., Inc.*, 2022 WL 2542025, at *7 (W.D. Pa. Mar. 1, 2022) (allegations that trade secrets consisted of a "specific mold configuration that can allow [a product] to be retrofitted to produce high-quality, crack-sensitive steel grades" provided sufficient particularity).

In any event, RVT's initial disclosures on their face disprove ABB's characterization. RVT's description of its trade secrets identifies *both* the problem to be solved *and* the source-code algorithms and operations that solve those problems. *See* D.I. 1 ¶¶ 57–65 (describing each trade secret and explaining how and why RVT's software operations implement them). RVT's initial disclosures reiterate these descriptions. The complaint even walks through each of the enumerated trade secrets and specifically identifies operations described in ABB's FlexVision user manual that correspond to the asserted trade-secrets and why. *See id.* at ¶¶ 132–141.

ABB cites *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 383 n.22 (3d Cir. 2021), for the reasonable-particularity standard. The trade secrets identified in *Mallet* were broad categories of information, like "formulas," and "pricing and volume data," with no further description of what formulas or data were being claimed. *Id.* at 376. RVT, in contrast, identified specific software operations and provided detailed technical descriptions of how each operation works and why it

provides a competitive advantage. *See* D.I. 1 ¶¶ 57–65. Despite *Mallet* observing that courts must "engage with the specific facts of the case and consider the degree of specificity necessary in light of the particular industry-based context and the stage of litigation," ABB provides no fact-based arguments as to why the degree of specificity here is insufficient in view of the industry context and stage of this litigation. *Mallet*, 16 F.4th at 382 n.22.

Instead, ABB plucks *one* example from *one* of RVT's five trade-secret descriptions and hypothesizes an additional detail that RVT might have provided. *See* ABB Ltr. at 3 (suggesting that RVT could have identified exemplary thresholds used in the "feature qualification" trade secret). But whether RVT could have said more does not answer the question of whether RVT has said enough. It has. *See Oakwood*, 999 F.3d at 906 (holding that a plaintiff need not "spell out" every detail of its trade secrets to identify them with "sufficient particularity"). ABB also does not provide any rationale for why it needs to know particular thresholds to be "on notice of the bases for the claim being made against it," *id.* Nor does ABB identify any deficiencies in the other trade secrets described in detail in RVT's initial disclosures. It merely dismisses them collectively as "vague" with no analysis. ABB Ltr. at 3.

Despite providing no support for its criticism of RVT's trade secrets, ABB proposes a "simple fix:" for RVT to provide a line-by-line mapping of its own eVF source code onto its asserted trade-secrets. *Id.* That is not how source code works. In reality, there are *pages* of code lines, scattered across disparate sections of the entire eVF code, that work together to achieve the asserted trade-secret operations. Parsing this code will be the subject of discovery, and RVT will provide the mapping that ABB asks for as discovery progresses. But it is not a "simple fix" for an early discovery dispute; this work will require a detailed technical analysis, including by source code experts. ABB cites nothing to suggest this level of detail is a prerequisite to providing *any* discovery on ABB's products.

ABB's own cited authority proves this point. In *SmithKline Beecham Pharmaceuticals Co. v. Merck & Co., Inc.*, 766 A.2d 442 (Del. 2000), the court approved of a process in which "Merck's initial disclosures described its entire process as a protectable trade secret" and "[t]hen, following discovery, it narrowed that broad trade secret claim to fit the particular aspects of the production process Merck claimed were misappropriated by SmithKline." *Id.* at 448. In this way, the court explained, "SmithKline was initially put on notice through Merck's broad disclosure but was subsequently informed well in advance of trial of the specific aspects of the trade secret Merck believed SmithKline misappropriated." *Id.*

Here, RVT's initial disclosures have provided far more specificity than those provided in *Merck*, and ABB will obtain still more specificity through the course of fact and expert discovery. "It cannot be said [that ABB is] prejudiced in any way," *id.*, by the fact that it does not have a line-by-line mapping of RVT's source code to its trade secrets at the outset of fact discovery.

In sum, RVT has identified its trade secrets with more than the requisite particularity for the industry-based context and the early stage of this litigation. Indeed, that ABB chose not to move to dismiss the complaint (or move for a more definite statement) on this basis is telling. The time for this challenge has passed. The Court should deny ABB's motion.

Respectfully submitted,

*/s/ John W. Shaw*

John W. Shaw (No. 3362)

cc:    Clerk of the Court (by CM/ECF & Hand Delivery)
       All counsel of record (by CM/ECF and e-mail)