# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

ROBOTICVISIONTECH, INC.

       Plaintiff,

  v.

ABB INC.

       Defendant.

C.A. No. 1:22-cv-01257 GBW

**DEFENDANT ABB INC.'S REPLY LETTER BRIEF IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFF'S <u>IDENTIFICATION OF ACCUSED PRODUCTS AND TRADE SECRETS</u>**

*Of Counsel:*

Gregory S. Bombard, Esq.
GREENBERG Traurig
One International Place
Boston, MA 02110
Phone: (617) 310-6027
Fax: (617) 310-6001
Email: gregory.bombard@gtlaw.com

Andrew Sommer, Esq.
GREENBERG TRAURIG
1750 Tysons Boulevard
Suite 1000
McLean, VA 22102
Tel: (703) 749-1370
Fax: (703) 749-1301
Email: sommera@gtlaw.com

Dated: May 18, 2023

Benjamin J. Schladweiler (#4601)
GREENBERG TRAURIG, LLP
222 Delaware Ave., Suite 1600
Wilmington, DE 19801
Phone: (302) 661-7000
Fax: (302) 661-7360
Email: schladweilerb@gtlaw.com,

*Counsel for Defendant ABB Inc.*

Dear Judge Williams:

This is Defendant ABB's reply letter in support of its Motion to Strike Plaintiff's Identification of Accused Products and Trade Secrets (D.I. 30).

### I. A Motion to Strike Is An Appropriate Vehicle To Hold RVT To Its Complaint.

ABB's Motion is procedurally proper. The parties' proposed Scheduling Order permits a "motion to strike any pleading *or other document*." (D.I. 27 at 6.) Moreover, the Court has an inherent power to strike documents other than pleadings, and it routinely exercises that power to strike deficient disclosures served pursuant to the Default Standard. *See, e.g.*, *T-Jat Sys. 2006 LTD. v. Expedia, Inc.*, C.A. No. 16-581-RGA, 2019 U.S. Dist. LEXIS 145935, at *5-6 (D. Del. Aug. 27, 2019). While RVT invokes *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977), that case does not involve the Court's inherent power to strike deficient discovery disclosures and ABB's motion would not preclude RVT from proceeding with "certain portions of its case" because ABB asks the Court to strike disclosures that *exceed* the Complaint.

### II. RVT's Disclosures Expand the Scope of Accused Products Beyond FlexVision.

As explained in ABB's Opening Letter, the only product accused of infringement in the Complaint is "ABB's FlexVision product," and the Complaint does not allege that other ABB products infringe. RVT concedes its Complaint accuses only ABB's "competing 3D robotic vision product, 'FlexVision.'" (Opp. at 1.) Yet, RVT's identification of accused products is not limited either to "FlexVision" or even to "3D robotic vision." RVT attempts to expand to all "robotic vision" products, regardless of whether those products share any features with FlexVision or bear any resemblance to the asserted patents. RVT says that it believes that all "of ABB's Robotic vision technology is built upon" FlexVision 3D. (Opp. at 2.) If RVT has any basis for this assertion, then it should identify the specific examples of ABB's robotic vision technologies that allegedly share features with FlexVision. At bottom, RVT's claims are belied by its own pleading and "[t]he general rule is that a complaint may not be amended through an opposition brief." *Stephenson v. Bank of Am.*, 2023 WL 2655681, at *3 (D. Del. Mar. 27, 2023).

RVT tries to pivot to a supposed industry understanding of the term "robotic vision technology," but fails to offer a clear definition of the term, either in its brief or its disclosure. (Opp. at 2.) RVT's citation to *Invensas Corp. v. Renesas Elecs. Corp.*, 287 F.R.D. 273, 282 (D. Del. 2012) supports ABB because it holds that party must first describe "the characteristics and components that the unaccused products must have in order to suggest that they may infringe" to get discovery into unaccused products. RVT has not done so. The patent claims require more than "robotic vision technology": they have lengthy claims and cite dozens of examples of "robotic vision technology" described in earlier patents and journal articles that cannot reasonably be within the scope of the patents. (D.I. 1-1, cover & 8:41-12:22.)

ABB's arguments are not noninfringement arguments. They are grounded in commonsense case management principles for patent cases whereby a plaintiff must first identify the specific products it accuses of infringement—not cast its net as wide as possible with vague and undefined terms. RVT argues ABB should "*list* **all** its products relating to machine vision technology and their functionality" so it can then decide what to accuse (Opp. at 3) (bold added). This argument is backwards. The rules do not permit a party to use discovery "to find out if it has a basis for a

claim." *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990). And while RVT attempts to justify this breadth by claiming to have "no insight into the inner workings of FlexVision," this is belied by the fact that RVT cites to the ***publicly available*** Integrated Vision manual in claiming that a product "used for **2D** part location" infringes its patents covering **3D** technology. (Opp. at 2-3, D.I. 31 at 1, Ex. C at 9-10). RVT's failure to accuse either ABB's Integrated Vision or FlexLoader products in its Complaint demonstrates that RVT lacks a good-faith basis to do so. The Court should not allow RVT to use disclosures as a substitute for well pled allegations.

### III.    RVT's Deficient Identification of Its Trade Secrets Should be Stricken.

RVT seeks to engage in the type of "sandbagging" that early trade secret identification prevents. RVT argues the nature and scope of its purported trade secrets "will be the subject of discovery" and even expert discovery. (Opp. at 5.) Permitting such late disclosure of the particulars of RVT's purported trade secrets will deprive ABB a fair opportunity to take discovery of RVT. RVT should need no discovery to identify its own purported trade secrets within its own source code. RVT inconsistently says that it has already identified "the source code algorithms and operations" but also that "parsing" its code "will require a detailed technical analysis." The fact that RVT seeks more time demonstrates that it has not identified its purported trade secrets with particularity. RVT should have identified its purported secrets and conducted sufficient due diligence into the public domain before filing a complaint alleging its purported trade secrets are not "readily ascertainable through proper means nor known to RVT's competitors . . . ." (D.I. 1, ¶ 207.) RVT does not address *Moog Inc. v. Skyryse, Inc.*, in which the court ordered a trade secret plaintiff to "identify the specific lines of code or programs claimed to be secret" *before* commencing fact discovery. 2022 WL 16852364, at *2 (W.D.N.Y. Jul. 22, 2022). Here, the Court should order RVT to do the same. RVT contends that its purported secrets span "*pages* of code lines, scattered across disparate sections of the entire eVF code." Opp. at 5. (RVT's emphasis). If this is true, then ABB should not be put to the burden of attempting to discern where they are within RVT's source code. Only RVT will be able to compare its alleged trade secrets to ABB's code; ABB will be deprived of that opportunity. This sandbagging should not be allowed.

RVT's citation to cases involving motions to dismiss miss the mark. In both *Oakwood Laboratories* and *Illumina* (relied on by RVT), the respective complaints provided a level of specificity well beyond what RVT has provided here, including mapping specific secrets to documents. See *Oakwood Labs.*, 999 F.3d 892, 901 (3d Cir. 2021) (plaintiff attached "eight highly confidential exhibits to support the trade secret descriptions, each exhibit containing a confidential chart or schematic relating to [the plaintiff's] secrets"); *Illumina*, 2023 WL 1407716, at *9 (D. Del. Jan. 31, 2023) (plaintiff "identified specific documents that purportedly disclose the trade secret."). And in this case, RVT *agreed* that it would, at the start of fact discovery, identify its trade secrets "with particularity," a standard of disclosure well above the "plausibility" standard of a motion to dismiss. (D.I. 27 ¶ 3(a)). Indeed, RVT's disclosure confirms that the disclosure is inadequate because it identifies only what is publicly available. See *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1112 (N.D. Cal. 2016) ("that Plaintiff publicly filed its trade secret disclosure belies the proposition that it contains information specific enough to be considered 'confidential' trade secrets."); *Shell v. Am. Fam. Rts. Ass'n*, 2012 WL 13005966, at *2 (D. Colo. Aug. 27, 2012) (public disclosure weighs against finding of reasonable particularity).

The Honorable Gregory B. Williams
May 18, 2023
Page 3

                                                    Respectfully,

                                                    Benjamin J. Schladweiler

cc:       All Counsel of Record via CM/ECF