# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBOTICVISIONTECH, INC.,<br><br>       Plaintiff,<br><br>    v.<br><br>ABB INC.,<br><br>       Defendant. | C.A. No: 22-cv-01257-GBW |

**ABB'S LETTER TO THE HONORABLE GREGORY B. WILLIAMS IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE OR, IN THE ALTERNATIVE, COMPEL SUPPLEMENTATION TO, ABB'S INITIAL INVALIDITY CONTENTIONS**

*Of Counsel:*

Gregory S. Bombard, Esq.
GREENBERG Traurig
One International Place
Boston, MA 02110
(617) 310-6027
(617) 310-6001
gregory.bombard@gtlaw.com

Andrew Sommer, Esq.
GREENBERG TRAURIG
1750 Tysons Boulevard
Suite 1000
McLean, VA 22102
(703) 749-1370
(703) 749-1301
sommera@gtlaw.com


Dated: February 7, 2024

Benjamin J. Schladweiler (#4601)
GREENBERG TRAURIG, LLP
222 Delaware Ave., Suite 1600
Wilmington, DE 19801
(302) 661-7000
(302) 661-7360
schladweilerb@gtlaw.com,

*Counsel for Defendant ABB Inc.*

**GT** GreenbergTraurig

Dear Judge Williams:

The Court should deny RVT's Motion to Strike Or, In The Alternative, Compel Supplementation To, ABB's Initial Invalidity Contentions. (D.I. 81). RVT's motion fails procedurally and substantively. Procedurally, RVT's motion seeks relief not contained in the parties' joint letter seeking relief from this Court (D.I. 74), and in violation of Local Rule 7.1.1, the Court's scheduling order (D.I. 48), and Federal Rule of Civil Procedure 16(b)(4). Substantively, RVT seeks to strike ABB's contentions that by definition are "initial," which ABB is "permitted to supplement" without leave of court, and which are a direct result of RVT's deficient infringement contentions.

### I.    RVT's Motion to Strike is Procedurally Improper

In direct violation of Local Rule 7.1.1, RVT never raised the preclusion relief it currently seeks during the parties' meet and confer, as evidenced by how RVT framed the relief it sought in the joint letter to this Court requesting a teleconference concerning this dispute. In that letter, RVT claimed it would "move[] to compel ABB to *amend* its initial invalidity contentions," not strike them. (D.I. 74). On this basis alone, the Court should deny RVT's motion. L.R. 7.1.1 (failure to abide by rule "may result in dismissal of the motion").

RVT's motion also violates the scheduling order, which outlines specific procedures that "shall" be followed when filing a motion to strike, none of which RVT complied with. (D.I. 48, ¶ 6). For instance, RVT's letter was not "accompanied" by a separate motion, making it impossible to tell what rule RVT is basing its motion on.[1] Moreover, by cloaking its motion to strike as a discovery dispute, RVT has ensured that ABB would not get the normal 5-page response and 7-day turn around for opposing a motion to strike (*id*.), but instead be limited to 3 pages and a 2-day response time. In violation of Federal Rule of Civil Procedure 16(b)(4), which states that a scheduling order "may be modified only for good cause and with the judge's consent," RVT did not seek the Court's approval to modify the scheduling order and certainly did not have "good cause" for doing so. Fed. R. Civ. P. 16(b)(4). This provides another basis to deny RVT's motion.

### II.    ABB's Initial Invalidity Contentions Are Sufficient For This Stage Of The Case

Striking ABB's initial invalidity contentions is not the appropriate remedy. One need look no further than RVT's own arguments in this case to reach that conclusion. As RVT argued in opposing ABB's motion to strike RVT's identification of accused products, "[b]ecause the end result of [RVT's] request would be to preclude [ABB] from maintaining certain portions of its case, the Court should—to the extent it even reaches the merits—evaluate [RVT's] motion under the *Pennypack* standard. *Pennypack* holds that the exclusion of evidence as a penalty for improper or untimely disclosure is an 'extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence.' *Meyers*

---

[1] RVT's letter brief is also silent concerning which rule its motion to strike is based on. (D.I. 81). Previously, RVT successfully argued that Rule 12(f) cannot be used to support a motion to strike contentions filed more than 21 days after the contentions were served, and ABB's invalidity contentions were served on December 15, 2023, more than 21 days before the joint letter seeking relief from this Court was filed. (D.I. 32, 44, 71, 74).

The Honorable Gregory B. Williams
Page 2

*v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977) (cleaned up)." (D.I. 32 at 1-2). Now, however, RVT has changed its posture, presumably deciding that the rules apply differently. RVT never mentions the *Pennypack* factors in its motion, much less any "willful deception or flagrant disregard of a court order." (D.I. 81).

RVT's complaints about ABB's initial invalidity contentions are misguided. By definition, ABB's contentions are "initial" and ABB is "permitted to supplement" them without leave of court. *See* D. Del. Default Standard, ¶ 4, n.3. Nonetheless, RVT seeks an order that "ABB may not rely on or assert any prior-art references [and combination of prior-art references] that were not charted" in ABB's initial contentions. (D.I. 81, Proposed Order). If RVT's motion is granted it would turn the Default Standard on its head because the distinction between "initial" and "final" contentions would become meaningless if parties were precluded from amending "initial" disclosures.

Not surprisingly, RVT fails to cite a single case in which a motion to strike initial contentions served pursuant to the Delaware Default Standard was granted. The *British Telecom* case cited by RVT involved a motion to amend ***final*** invalidity contentions after the deadline in the scheduling order passed and after the court already provided the defendant an opportunity to amend those final contentions following a court-ordered reduction in the number of prior art references—it did not involve a motion to strike initial infringement contentions. *See British Telecom PLC v. IAC/Interactive Corp.*, C.A. 18-cv-366-WCB, D.I. 210 at 1-3 (**Ex. A**). Even though the case was in expert discovery at the time, the *British Telecom* court found it was "premature" to bar defendant from using the uncharted references, noting that plaintiff "may move to strike any specific portions of [defendant's] expert reports" that improperly use uncharted references at the appropriate time. *Id.* at 12-13. The *Rampion* case cited by RVT was decided under the local patent rules of the Western District of Washington, which have different requirements than the Delaware Default Standard. *See 0912139 B.C. Ltd. v. Rampion USA Inc.*, 2019 WL 3082290, at *1-5 (W.D. Wash. July 15, 2019). Courts in this District have made clear that "initial" contentions under the Default Standard may be amended. *See, e.g., First Quality Tissue, LLC v. Irving Consumer Prods. Ltd.*, C.A. 19-428-RGA, D.I. 149 at 5-6 (D. Del. Oct. 27, 2020) (**Ex. B**) (denying motion to strike amended initial contentions because "excluding this critical evidence would be 'an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence'") (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994)).

### III.    ABB's Initial Contentions Reflect RVT's Deficient Infringement Contentions

ABB's initial invalidity contentions are as fulsome as they can be in light of RVT's deficient contentions, with charts spanning thousands of pages and with multiple prior art combinations charted for each asserted patent. For instance, in the passage cited by RVT, ABB explains that the charted reference (Martinet) can be combined with or replaced by other "calibration references," "references that discuss [] positional based visual servoing," and "references that disclose a 'teaching object'"—and in each instance, ABB's contentions provide explicit examples of those references. (D.I. 81 at 2, Ex. 2 at 1 n.1). The law cited by RVT shows that contentions such as these—which "organize[] prior art references into groups and articulate[] an overarching theory of obviousness that applie[s] to 'each and every possible combination[]' of

The Honorable Gregory B. Williams
Page 3

prior art within the groups"—satisfy a defendant's "obligation to disclose obviousness contentions." *Rampion*, 2019 WL 3082290, at *6.

Any "deficiencies" in ABB's initial charts are a direct result of RVT's deficient infringement contentions and expansion of accused products beyond those disclosed in its complaint and for which RVT has never offered a viable infringement theory. For instance, RVT claims that "ABB lists a number of its own products as allegedly invalidating the asserted patents," but the cited snippet from ABB's invalidity contentions only lists one ABB product, PickMaster. ABB lists that product because "RVT's contentions accuse PickMaster of infringing the '814 Patent," despite the fact that ABB was selling PickMaster years before the priority date of the '814 Patent. (D.I. 81 at 1 and Ex. 1 at 12-13). RVT's infringement theories for this product are impossible to comprehend because RVT contends only that "[d]iscovery, including source code, will show that, similar to ABB's FlexVision, the PickMaster products" infringe. Therefore, ABB "disagrees with RVT's contentions," but makes clear that "to the extent RVT's theories apply, PickMaster anticipates and/or renders obvious the '814 Patent." (*Id.*, Ex. 1 at 13, n.6). Contrary to RVT's assertions, it is not ABB's burden to "account for material differences" in its PickMaster product "over this time," but rather RVT's burden to first identify the features of the PickMaster product that meet the limitations of the asserted claims of the '814 Patent. Realizing the problem that RVT has created for itself by leveling unsupported and unresearched allegations, it now states that it is only accusing *some* PickMaster products—those that existed after the filing of its patents. (*Id.* at 1). That limitation does not appear in RVT's contentions. (D.I. 80, Ex. 14, App'x M at 1).

Lastly, RVT suggests that ABB's initial contentions should be stricken because ABB reserved the right to amend those contentions. (D.I. 81 at 2-3). RVT's position would rewrite the Default Standard, which expressly says such initial disclosures can be amended. If ABB's contentions should be struck for this reason, RVT's initial infringement contentions should be too, because RVT also "reserves the right to supplement or amend these contentions." (D.I. 80, Ex. 14, App'x M at 1).

## IV.    RVT's Alternative Relief Should Be Denied

In the alternative, RVT asks this Court to "at least compel ABB to identify the prior-art references and combinations on which it intends to rely and provide details regarding how the references in those combinations satisfy the limitations of the asserted claims." (D.I. 81 at 3). As stated above, to streamline this case ABB is willing to amend its contentions and reduce the number of prior art references after RVT properly amends its deficient contentions and reduces the number (82) of asserted claims. That said, RVT's proposed order attached to its motion makes clear that it seeks an amended disclosure from ABB that goes well beyond that contemplated by the Default Standard. Specifically, RVT seeks an order compelling ABB to "identify all prior art-references, combinations, and grounds on which it intends to rely to assert that any of the Asserted Patents are invalid," by "March 1, 2024"—more than three and a half months before ABB's final invalidity contentions are due—presumably so that it can lock ABB into its initial positions earlier than the scheduling order contemplates. (D.I. 81, Proposed Order; D.I. 48 at 1). Such relief is contrary to the Default Standard and the scheduling order, which should govern disclosure of contentions in this matter. Instead, this Court should order RVT to first reduce the number of asserted claims and fix its deficient infringement contentions so that ABB can then reduce the number of prior art references and amend its initial invalidity contentions accordingly.

The Honorable Gregory B. Williams
Page 4

Respectfully,

Benjamin J. Schladweiler

cc.  All Counsel of Record via CM/ECF