IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROBOTICVISIONTECH, INC.,

                    Plaintiff,

        v.

ABB INC.,

                    Defendant.

C.A. No. 22-1257-GBW

---

John W. Shaw, Andrew Russell, Nathan Roger Hoeschen, SHAW KELLER LLP, Wilmington, DE; Anna G. Phillips, John C. Rozendaal, Kristina C. Kelly, Michael E. Joffre, William H. Milliken, STERN KESSLER PLLC, Washington, D.C.

      *Counsel for Plaintiff*

Benjamin J. Schladweiler, Andrew R. Sommer, Gregory S. Bombard, GREENBERG TRAURIG LLP, Wilmington, DE; Brian A. Biggs, DLA PIPER LLP, Wilmington, DE

      *Counsel for Defendant*

**MEMORANDUM OPINION**

March 27, 2024
Wilmington, Delaware

GREGORY B. WILLIAMS
U.S. DISTRICT JUDGE

Pending before the Court is Defendant ABB, Inc.'s partial motion to dismiss Plaintiff RoboticVISIONTech, Inc.'s ("RVT") trade secret misappropriation claims.[1]  D.I. 11.  For the reasons set forth below, the Court grants ABB's motion.

## I.   BACKGROUND

The parties to this action are RVT (a company that sells machine vision software for use in automation and robotics technologies) and ABB (a company that sells automobile manufacturing robots).  RVT alleges that ABB hired away RVT's chief scientist, Dr. Remus Boca, and used trade secrets that were in Dr. Boca's possession to develop FlexVision, ABB's product. *See* D.I. 16 at 4-5.  RVT contends that FlexVision is similar to its product, eVisionFactory, and that the reason those two products are similar is because ABB incorporated RVT's trade secrets into FlexVision's source code. *Id.*

Dr. Boca was one of the main architects behind the eVisionFactory source code. *Id.*  But, in 2010, Dr. Boca left RVT and joined ABB. *Id.*  RVT contends that, when he left, Dr. Boca breached his employment contract by failing to return four (4) RVT-issued devices (including two computers and two hard drives) that contained copies of RVT's source code. *See* D.I. 16 at 4. Moreover, when Dr. Boca eventually did return those devices, RVT contends that all the information previously contained on those devices had been deleted. *Id.*  As a result, RVT contends that ABB, through Dr. Boca, obtained RVT's trade secrets, and used those trade secrets to build its competing product, FlexVision. *See id.* at 5-7.

---

[1] Also pending before the Court are a number of discovery disputes between the parties.  The Court will resolve those issues at a later date.

RVT filed this case, alleging patent infringement, copyright infringement, and trade-secret misappropriation, after it obtained the product manual for ABB's FlexVision product from an "integrator," i.e., a services firm that is responsible for integrating machine technology and software from multiple providers. *Id.* at 4. In support of its claim that FlexVision incorporates its trade secrets, RVT points to (1) public marketing materials and statements that ABB made about FlexVision in 2016 and 2017; (2) the FlexVision product manual that ABB provides to customers who buy FlexVision; and (3) a comparison of those marketing materials, statements, and manuals with the capabilities of RVT's product, eVisionFactory. *See, e.g.,* D.I. 1 at ¶ 37; *id.,* Ex.7.

In response, ABB filed this motion, and asks the Court to dismiss RVT's trade secret misappropriation claims on the grounds that those claims are time-barred by the applicable three-year statute of limitations for federal and Delaware trade secret misappropriation claims.[2] *See* D.I. 12. ABB argues that the statute of limitations began to run once RVT had inquiry notice of ABB's potential misappropriation of its trade secrets. ABB contends that RVT obtained that notice in either 2010 (when Dr. Boca allegedly provided RVT's trade secrets to ABB) or, alternatively, in 2015 (when ABB released FlexVision). *Id.*

RVT disagrees, and contends that ABB's launch of FlexVision, and its public marketing materials and statements related to that product, were not sufficient to put it on inquiry notice of its potential trade secret misappropriation claims against ABB. *See* D.I. 16. RVT argues that it was only able to piece together ABB's purported trade secret misappropriation in 2021, after it heard rumors from its customers that ABB had misappropriated its trade secrets and obtained a

---

[2] RVT filed its complaint on September 22, 2022. Thus, ABB argues that RVT's claims are time-barred because those claims were filed after September 22, 2019.

copy of FlexVision's product manual from a RVT customer. RVT contends that it was not able to obtain that product manual before 2021, because (1) ABB only provides that product manual to purchasers of FlexVision and, as a competitor, ABB would not sell that product to RVT; and (2) RVT pressuring its customers to share operational details of ABB's product would have "border[ed] on corporate espionage." *Id.* at 5-6, 17-18.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss

· To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). But the Court will "'disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements.'" *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)). Under Rule 12(b)(6), the Court must accept as true all factual allegations in the Complaint and view those facts in the light most favorable to the plaintiff. *See Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 351 (3d Cir. 2020).

4

**B.      Statute of Limitations**

Under both the Defend Trade Secrets Act ("DTSA") (Count VII) and the Delaware Uniform Trade Secrets Act ("Delaware UTSA") (Count VIII), a plaintiff must bring its claim within three (3) years of the date the misappropriation "is discovered or by the exercise of reasonable diligence should have been discovered." *See* 18 U.S.C. § 1836(d); 6 Del. C. § 2006. Under Delaware law, the statute of limitations begins to run when a plaintiff has (1) actual notice of the basis for the cause of action or (2) has inquiry notice—i.e., "notice of facts from which the basis for the cause of action could have been discovered by the exercise of reasonable diligence." *Ocimum Biosolutions (India) Ltd. v. AstraZeneca UK Ltd.*, 2019 WL 6726836, at *9 (Del. Super. Ct. Dec. 4, 2019), *aff'd*, 247 A.3d 674 (Del. 2021). "A party is on inquiry notice when it has facts sufficient to make it suspicious or that ought to make it suspicious. Those facts effectively must rise to the level of a 'red flag' that would prompt a prudent person of ordinary intelligence to further investigate a possible claim." *Id.* at 10 (cleaned up).

While the statute of limitations is technically an affirmative defense, the Court will consider that defense at the motion to dismiss stage if "the time alleged in the statement of [the] claim shows that the cause of action has not been brought within the statute of limitations." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (internal citations omitted). However, "if the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Id.* (internal citations omitted).

**III.   DISCUSSION**

**A.      The Court Grants ABB's Motion to Dismiss RVT's Trade Secret Misappropriation Claims Because Those Claims Are Time-Barred.**

For the reasons stated below, the Court agrees with ABB that RVT obtained inquiry notice of its trade secret misappropriation claim by, at the latest, ABB's launch of FlexVision.

5

Accordingly, the Court grants ABB's motion to dismiss those claims as time-barred because ABB launched FlexVision in 2015—more than three (3) years prior to RVT's filing of its complaint. *See* D.I. 1 at ¶ 35.

### i. The Court Finds that RVT Obtained Inquiry Notice of Its Trade Secret Misappropriation Claims When Dr. Boca Failed to Return Confidential Information to RVT.

In some cases, a plaintiff can be deemed to have inquiry notice of its potential misappropriation claim against a competitor when the plaintiff's employee (1) fails to return confidential information to the plaintiff upon termination of their employment, and (2) joins the plaintiff's competitor. *See Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 1924992, No. 18-CV-00404-LHK, at *13 (N.D. Cal. Apr. 30, 2019); *Wang v. Palo Alto Networks, Inc.*, No. C 121-05579-WHA, 2014 WL 1410346, at *7 (N.D. Cal. Apr. 11, 2014). For example, in *Wang*, the court found that the plaintiff was on inquiry notice after one of its employees breached their non-disclosure agreement by (a) failing to return documents that contained the plaintiff's trade secrets and (b) joining a competitor while being in possession of those trade secrets. 2014 WL 1410346 at *7. Specifically, the parties in *Wang* had a non-disclosure agreement that stated: "Upon termination or expiration of the Agreement, or upon written request of [Wang], [defendant] shall promptly return to [Wang] all documents and other tangible materials representing the Confidential Information and all copies thereof." *Id.* at 2. The court found that the defendant had "violated his agreement to return the documents containing Wang's alleged trade secrets" and that such a breach was sufficient to put the plaintiff on inquiry notice because the plaintiff knew that the defendant had joined a competitor and had "never asked for relief from his duty to return the trade secrets." *Id.* at 7. Similarly, in *Alta Devices*, the court found that a plaintiff was on inquiry notice when the defendant breached its duty to return confidential information that it had received

6

pursuant to an NDA and sought to engage in work within the plaintiff's field. 2019 WL 1924992 at *13.

The Court agrees with ABB that the instant case is like *Wang* and *Alta Devices* because RVT pled in its complaint that Dr. Boca (1) possessed RVT's trade secrets, (2) had a duty to return those trade secrets to RVT upon termination of his employment with RVT, (3) failed to return those trade secrets, and (4) possessed those trade secrets when he joined ABB. *See, e.g.*, D.I. 1, ¶¶ 17-19, 21-22, 126-127. Specifically, RVT's complaint alleges that Dr. Boca had "full and unfettered access to [RVT's] source code" because he was "in possession of two RVT-issued laptops and two RVT-issued external hard drives, which contained RVT's confidential and proprietary information" related to RVT's product, eVisionFactory. *Id.* at 21. The complaint also alleges that Dr. Boca was subject to an NDA, and that RVT's "company policy required employees to return work-issued laptops and hard drives upon leaving the employ of RVT." *Id.* at ¶¶ 19, 21. RVT further alleges that Dr. Boca violated that policy by failing to return those devices to RVT upon its request and the information previously contained within those devices had been deleted by the time those devices were finally returned to RVT. *Id.* at ¶ 22.

RVT attempts to distinguish *Wang* and *Alta Devices* on the grounds that there was "no material dispute of fact" in those cases "that the misappropriation would have been discoverable upon reasonable investigation." D.I. 16 at 15. Here, RVT contends that ABB misappropriated RVT's trade secrets to develop the source code of its product, FlexVision, and that RVT had no way to access ABB's confidential source code. *Id.* at 5. As a result, RVT contends that its injury was "inherently unknowable" and, thus, a reasonable investigation would not have identified ABB's misappropriation. *Id.* at 14-15. Also, RVT contends that Dr. Boca concealed the trade secrets that he took to ABB by deleting that information from his laptops and hard drives before

7

returning those devices to ABB. *Id.* Therefore, RVT had no way of knowing what, if any, confidential information was given to ABB by Dr. Boca. *Id.* Furthermore, RVT contends that a demand letter accusing ABB or Dr. Boca of misappropriation would have been "futile" because it had "no reason to believe that ABB would have responded with anything other than a blanket and emphatic denial" to any allegation of misappropriating RVT's trade secrets. *Id.* at 18.

The Court, however, is not persuaded by RVT's arguments that *Wang* and *Alta Devices* are distinguishable. As an initial matter, the Court is not convinced that RVT needed the specific details of how FlexVision operates to be on inquiry notice of ABB's alleged misappropriation, because the courts in *Wang* and *Alta Devices* found that a party is put on inquiry notice of its potential claim against a competitor when that party's former employee retains confidential information in breach of that employee's NDA and joins a competitor. *See Alta Devices*, 2019 WL 1924992 at *13; *Wang,* 2014 WL 1410346 at *7. Thus, those cases found that an employee's conduct by itself can be sufficient to place a party on inquiry notice of its misappropriation claim. *See id.*

Similarly, the Court is not convinced by RVT's argument that it lacked inquiry notice because it did not know what information Dr. Boca shared with ABB. D.I. 16 at 15. Given that Dr. Boca was RVT's Chief Scientist, RVT knew, or should have known, that Dr. Boca's devices likely contained RVT's trade secrets. Thus, Dr. Boca's failure to return those devices until more than two months after he joined RVT's competitor, following multiple requests from RVT that he return those devices, was sufficient to put RVT on inquiry notice that Dr. Boca may have misappropriated RVT's trade secrets. *See* D.I. 1, ¶ 22. To the extent that RVT argues that Dr. Boca might have deleted any confidential information from his devices before joining ABB, the Court is not persuaded by that argument because RVT pled that Dr. Boca had access to RVT's

8

source code "within his own knowledge as an architect of the code." D.I. 1 at ¶ 126. As a result, RVT knew, or should have known, that ABB had access to RVT's trade secrets and, therefore, had a duty to conduct a diligent inquiry to allay those suspicions. *See Ocimum*, 2019 WL 6726836 at *11.

To be clear, the Court does not find that a former employee's retention of confidential information upon acceptance of a job offer from a competitor will always put their former employer on inquiry notice of a potential trade secret misappropriation claim against the company that hired that employee. A party that has, or should have become, suspicious that someone has misappropriated its trade secrets is not on inquiry notice of its potential claim against a second-party if the suspicious party conducts a diligent inquiry that allays its suspicions. *See id.* A party is also entitled to reasonably rely on a second party's representations that it has not misappropriated the first party's trade secrets. *See id.*; *Raytheon Co. v. Indigo Sys. Corp.*, 688 F.3d 1311, 1318 (Fed. Cir. 2012).

Thus, for example, if Dr. Boca had told RVT that he had deleted any confidential information from the devices he failed to return to RVT, then RVT may have been entitled to rely on that statement—if such reliance would have been reasonable—and, as a result, might not have had inquiry notice of its potential trade secret misappropriation claim. *See id.* In fact, however, RVT did not even ask Dr. Boca to confirm that his work-issued devices had been wiped prior to his joining ABB. *See* D.I. 1. RVT also did not ask ABB to confirm that it was not using RVT's trade secrets. *See id.* Accordingly, the Court finds that RVT failed to timely conduct a diligent inquiry into whether Dr. Boca or ABB had misappropriated its trade secrets after a reasonable person would have been, or should have been, suspicious that Dr. Boca or ABB had misappropriated RVT's trade secrets. *See Ocimum*, 2019 WL 6726836 at *11.

The Court is also not convinced by RVT's argument that *Accenture Glob. Servs. GmbH v. Guidewire Software Inc.* compels a different result. *See* D.I. 16 at 13; 691 F. Supp. 2d 577, 591-594 (D. Del. 2010). In *Accenture*, the plaintiff reviewed the defendant's website and saw "high-level similarities" between the parties' products, including similar marketing, names, and functional product descriptions. *See* 691 F. Supp. 2d at 592-593. Those similarities gave the plaintiff "concern" that the defendant had copied its patent-pending inventions, but did not make it suspect the defendant of misappropriating its trade secrets. *Id.* at 594. Thus, the plaintiff did not sue the defendant for allegedly misappropriating its trade secrets at that time. *Id.* Instead, the plaintiff sued the defendant only after the parties entered into a joint business venture that provided the plaintiff access to technical information about the defendant's product. *Id* at 592-593. After reviewing that technical information, the plaintiff inferred that the defendant had obtained the plaintiff's trade secrets through a third-party for whom both the plaintiff and defendant had done work. *Id.* However, the plaintiff was unaware of precisely how the defendant had obtained those trade secrets. *Id.* After the plaintiff filed suit, the defendant argued that the plaintiff's cause of action was time-barred by the applicable statute of limitations because the plaintiff was on notice of the defendant's alleged misappropriation as of the plaintiff's first visit to the defendant's website. *Id.* at 591. The court disagreed, and found that the plaintiff's first reasonable opportunity to discover its cause of action was when it obtained the technical information about the defendant's product. *Id.* at 594.

The court finds that *Accenture* is distinguishable from the instant action because the plaintiff in that case was not aware of how the defendant had obtained the plaintiff's trade secrets, as the defendant had allegedly acquired the plaintiff's trade secrets through a third-party. Thus, in *Accenture*, the plaintiff's observation of high-level similarities between the parties' products was

not a "red flag" that would prompt a prudent person of ordinary intelligence to further investigate whether their trade secrets had been misappropriated. *See Ocimum*, 2019 WL 6726836 at \*10. By contrast, in the instant action, RVT had such a "red flag," because RVT was aware that ABB had hired away Dr. Boca—RVT's Chief Scientist and "one of the main architects" of RVT's product—and RVT was aware that Dr. Boca had failed to return confidential information to RVT prior to joining ABB. *See* D.I. 1 at ¶¶ 17, 20, 127.

Further, the Court also finds that *Accenture* is distinguishable for the separate reason that it is unclear whether the plaintiff in *Accenture* knew, at the time it reviewed the defendant's website, that the defendant was working with individuals from the third-party company that had access to the plaintiff's trade secrets. *See* 691 F. Supp. 2d 577, 592-593. Thus, it is not clear that the plaintiff in *Accenture*, when it first reviewed the defendant's website, had any reason to suspect the defendant of being able to obtain access to the plaintiff's trade secrets. *See id.* Conversely, RVT was aware that Dr. Boca had RVT's trade secrets in his possession, in violation of his confidentiality agreement with RVT, when Dr. Boca joined ABB. *See* D.I. 1 at ¶ 127. The Court finds those facts sufficient to distinguish this case from *Accenture*.

In addition, the Court also finds that the instant action is distinguishable from *Veritas Operating Corp. v. Microsoft Corp*—a case that the court in *Accenture* found similar to the issues before that court. In *Veritas*, the parties had a contract that permitted the defendant to use the plaintiff's trade secrets for some purposes but not others. *See* 2008 WL 474248, \*10-12 (W.D. Wash. Feb. 4, 2008). Accordingly, to determine whether the defendant's product misappropriated the plaintiff's trade secrets (which included the plaintiff's source code), the parties agreed that it was necessary to make a line-by-line comparison of the parties' source code to determine how much of the plaintiff's code was in the defendant's product. *Id.* at 11. The Court finds *Veritas*

11

distinguishable from the instant action because RVT never provided ABB *any* legitimate access to its trade secrets. *See* D.I. 1. Thus, RVT did not need to conduct a line-by-line analysis of the source code for FlexVision and eVisionTech to be objectively aware that ABB may have misappropriated its trade secrets as ABB's mere possession of those trade secrets was a "red flag." *See Ocimum*, 2019 WL 6726836 at \*9-10 ("A person is on inquiry notice when they objectively are aware of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of facts constituting the basis of the cause of action.") (internal citations omitted).

Accordingly, under the circumstances of this case, the Court finds that RVT had a reasonable opportunity to discover its potential misappropriation claim once it was aware of Dr. Boca's actions—i.e., prior to reviewing ABB's technical information.

### ii. The Court Finds that ABB's Launch of FlexVision Put RVT on Inquiry Notice.

Even if the Court were to find that there exists a genuine dispute of material fact regarding whether RVT was on inquiry notice as of the date that Dr. Boca joined ABB, the Court would still grant ABB's partial motion to dismiss RVT's trade secret misappropriation claims because RVT was on inquiry notice of those claims as of the release date of ABB's product.

RVT contends that the release of FlexVision was not sufficient to place RVT on inquiry notice because RVT did not have specific details of how FlexVision operates and, thus, could not determine if that product misappropriated its trade secrets. *See* D.I. 16. The Court agrees that a competitor's launch of a similar product is not, alone, sufficient to place a party on inquiry notice, because products that achieve similar results might do so using different methods. Here, however, RVT knew that (1) FlexVision was similar to eVisionFactory, and (2) Dr. Boca had left RVT to join ABB while potentially being in possession of confidential information. *See* D.I. 1 ¶¶ 26, 29.

12

The similarities of FlexVision and eVisionFactory, in light of Dr. Boca's prior conduct, was sufficient to place RVT on inquiry notice of its potential misappropriation claim against ABB. *See Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 365-367 (5th Cir. 2000); *Computer Associates Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 457 (Tex. 1996) ("Suspicions should abound when a competitor markets a product similar to that previously developed by a former employer after one of the former employer's employees begins work for the competitor.").

### iii. The Court Finds that RVT's Alleged Injury Was Not "Inherently Unknowable."

The Court is also not convinced that RVT's alleged injury was "inherently unknowable" prior to RVT's review of FlexVision's product manual. "Delaware courts consistently have concluded that inquiry notice may arise before a plaintiff has full or complete knowledge of the extent of its claims." *Ocimum*, 2019 WL 6726836 at *12. Accordingly, the statute of limitations begins to run when the plaintiff reasonably should have been aware of its trade secret misappropriation claim—rather than when the "plaintiff can unassailably establish [such a claim]"—because, otherwise, the statute of limitations would be tolled in every case where "the plaintiff never discovers 'smoking gun' evidence of misappropriation.'" *VLIW Tech., LLC v. Hewlett-Packard Co.*, 2005 WL 1089027, at *15 (Del. Ch. May 4, 2005) (citing *Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1218 (10th Cir. 2000)).

As discussed above, under the circumstances of this case, Dr. Boca's conduct, and ABB's release of FlexVision, was sufficient to place RVT on inquiry notice that ABB may have misappropriated its trade secrets. *See supra* at § III.A(i-ii). Accordingly, RVT was not "blamelessly ignorant of [ABB's purported] wrongful act" because earlier discovery of RVT's potential misappropriation claim was not a "practical impossibility." *See In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *5 (Del. Ch. July 17, 1998), *aff'd*, 725 A.2d 441 (Del. 1999).

13

## IV.    CONCLUSION

For the foregoing reasons, this 27th day of March, 2024, **IT IS HEREBY ORDERED** that:

1.    Defendant's Motion to Dismiss Plaintiff's Trade Secret Misappropriation Claims for Failure to State a Claim, D.I. 11, is **GRANTED**; and

2.    The parties shall meet and confer and, by no later than March 29, 2024, provide the Court with a joint status report identifying all of the parties' discovery disputes that remain given the rulings in this Opinion.