## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBOTICVISIONTECH, INC., | | |
| Plaintiff, | | |
| v. | | C.A. No. 22-1257-GBW |
| ABB INC., | | |
| Defendant. | | |

### MEMORANDUM ORDER

Pending before the Court are (1) Plaintiff RoboticVISIONTech, Inc.'s ("RVT") motions to (a) show cause and compel document production (D.I. 60); and (b) strike or, in the alternative, compel supplemental infringement contentions (D.I. 81); and (2) Defendant ABB, Inc.'s motions to (a) compel RVT to identify additional custodians and produce their documents (D.I. 61); (b) limit the number of asserted claims (D.I. 80); and (c) compel supplemental infringement contentions (*id.*).

### I.      DISCUSSION

#### A.      RVT's Motion to Show Cause And Compel Document Production.

RVT asks the Court to compel ABB to (1) produce core technical documents and source code for the machine vision products charted in RVT's infringement contentions, (2) list all of ABB's machine vision products and describe those products' functionalities (i.e., RVT's Interrogatory I), (3) supplement ABB's responses to Interrogatories 2–4, 8, 11, 12, and 14 (commensurate with the scope of the accused products), and (4) respond to RVT's document

requests for the machine vision products charted in RVT's contentions. D.I. 60 at 2. For the reasons stated below, the Court denies RVT's motion.

RVT previously moved to compel document production on all of ABB's robotic vision products. *Id.* at 1. The Court granted RVT's motion to compel after holding a hearing on that motion. *Id.* During that hearing, the Court explained that "what [RVT] accused ... go[es] to the functionality of the ABB FlexVision product, even if the brand-name of another product is something different than FlexVision." *Id.* (citing Aug. 16, 2023 Tr. at 28:19–25). Accordingly, the Court gave ABB additional time to determine whether, in light of the Court's order, it had an obligation to produce documents related to any other ABB products. D.I. 64 at 1-2. ABB concluded that it did not. *Id.* RVT disagrees, and contends that ABB should have disclosed technical documents and source code related to, at least, ABB's PickMaster, YuMi, Integrated Vision, 3DQI, and FlexLoader products—products that, according to RVT, relate to "machine vision technology." *Id.* at 2.

The Court, however, is not convinced that its Order required ABB to produce the technical documents and source code of those products because the Court's Order was limited to products that incorporate the "functionality of the ABB FlexVision product." Aug. 16, 2023 Tr. at 28:19–25. RVT, in its initial motion to compel document production (D.I. 38), explained its position that ABB incorporated aspects of RVT's robotic vision technology software, eVF, into ABB's product, FlexVision. Before ABB had access to eVF, "ABB did not have 3D robotic vision technology of its own"—i.e., the technology to which the Accused Patents in this case (U.S. Patent Nos. 8,095,237, 7,336,814, and 6,816,755) are directed. *Id.* at 1.

As a result, the Court is not convinced that RVT has shown that the products developed by ABB prior to the events that formed the basis for RVT's complaint—namely, ABB's licensing of

2

eVF—incorporate the allegedly infringing core functionality of FlexVision. For example, ABB has sold PickMaster since 1999, but did not license eVF until 2006. D.I. 64 at 2; D.I. 1 ¶ 11-12. RVT argues that PickMaster, among other products, "appear[s] to incorporate or build upon the core FlexVision functionality" because ABB has described that product "as a vision system[] for robots that enhance robotic motion in factory environments." D.I. 60 at 2 (internal citations omitted). However, the alleged functionality of FlexVision does not extend to every type of robotic vision system. *See* D.I. 38. Instead, the alleged functionality of FlexVision is "3D robotic vision software"—i.e., a specific type of robotic vision software.

Accordingly, because RVT has not presented evidence that elements of the accused FlexVision functionality were incorporated into the products for which RVT seeks discovery— such as a shared development team, or a showing that a specific ABB product incorporates features of FlexVision—the Court is not convinced that RVT has shown that it is entitled to discovery into those products at this time.

ABB licensed eVF in 2006. D.I. 1 ¶ 11-12. As a result, RVT may be able to show that ABB, after 2006, updated its products with the allegedly infringing aspects of FlexVision. However, based on the current record before the Court, RVT has not made such a showing. *See, e.g.*, D.I. 60, Ex. 8 ("The [Integrated Vision] system may be used as an alternative to mechanical fixtures to find the location and angle of the part *in 2D*") (emphasis added). Thus, the Court denies RVT's motion to compel the production of additional documents along with its related motion to show cause.

RVT also asks the Court to compel ABB to supplement its production of its "core technical document[s]" and external libraries.[1]  D.I. 60 at 2-3.  Specifically, RVT contends that ABB has not produced (1) the source-code specifications for FlexVision or any documents that explain the development or authorship of that source code, (2) any technical documents disclosing the functionalities of the various robots and vision systems into which the FlexVision code (or its functionality) are incorporated, and (3) any sales information for those robots and vision systems. *Id.*

ABB contends that it does not have "source code specifications for FlexVision," and that the Cognex external library is in the possession of Cognex, a third party.  D.I. 97.  ABB states that it has produced documents responsive to the remainder of RVT's request for documents, namely: (1) "git mirrors that show the date and person responsible for every change to the FlexVision code to the extent ABB has that information," and (2) "a spreadsheet providing financial information for every FlexVision sale, along with purchase orders and invoices for each of those sales."  *Id.*

RVT has not shown that ABB has the "legal right or ability" to obtain the Cognex libraries from Cognex. *See Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004) ("In the context of Fed. R. Civ. P. 34(a), so long as the party has the legal right or ability to obtain the documents from another source upon demand, that party is deemed to have control.").  Accordingly, the Court denies RVT's motion to compel ABB to produce that source code.  Also, given ABB's representations to this Court that it has produced what responsive information it has to the remainder of RVT's requests, the Court denies the remainder of RVT's motion.

---

[1] Including the Cognex software library, which RVT contends is partially incorporated into FlexVision and is responsible for performing certain machine-vision tasks.  D.I. 60, Ex. 2.

**B.     RVT's Motion to Strike or, In The Alternative, Compel Supplemental Invalidity Contentions.**

RVT asks the Court to strike ABB's initial invalidity contentions. D.I. 81. That motion is denied. Among other reasons, RVT's motion makes no mention of the *Pennypack* factors that govern the resolution of its motion and why the Court should strike ABB's initial contentions—if the Court finds that those contentions are deficient— instead of granting ABB leave to amend. *See id.* Considering that "each party shall be permitted to supplement" its initial disclosures, D. Del. Default Standard (the Default Standard), ¶ 4, n.3, the Court is not convinced that RVT has shown that ABB's initial disclosures are so deficient that striking those disclosures is an appropriate remedy. *See, e.g., First Quality Tissue, LLC v. Irving Consumer Prods. Ltd.*, C.A. 19-428-RGA, D.I. 149 at 3, 5-6 (D. Del. Oct. 27, 2020) (denying motion to strike contentions that were supplemented after the close of fact discovery as exclusion of those supplementations would be an extreme sanction) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994).

In the alternative, RVT asks the Court to compel ABB to identify the prior-art references and combinations on which it intends to rely, and explain how those combinations satisfy the limitations of the asserted claims. D.I. 81 at 3. RVT argues that ABB's invalidity contentions are deficient because those contentions (1) list over a hundred alleged prior-art references that do not appear in the claim charts, (2) list ABB's own products as prior-art references without explaining how those products meet the limitations of the asserted claims, (3) note that additional references could be substituted for the references detailed in the charts without explaining why those substitutions could be made, and (4) reserve ABB's right to identify other invalidating combinations "as appropriate." *Id.* at 1-2. For the reasons stated below, the Court denies RVT's motion.

ABB responds that its initial invalidity contentions are sufficient because those contentions "organize its prior art references into groups and articulate an overarching theory of obviousness that applies to each and every possible combination of prior art within those groups." D.I. 84 at 2-3 (cleaned up) (citing *0912139 B.C. Ltd. v. Rampion USA Inc.*, 2019 WL 3082290, at \*1-5 (W.D. Wash. July 15, 2019)). Further, ABB explains that—while it takes the position that its own products do not meet the limitations of the asserted claims—it listed those products because RVT contends that those products infringe. *Id.* Accordingly, if those products infringe, they anticipate the Asserted Patents because ABB was selling those products prior to the priority date of the Asserted Patents. *Id.*

The Court declines to compel ABB to supplement its initial invalidity contentions because the Court finds that RVT's motion is premature. If ABB does not adequately chart its prior-art references—such that its initial invalidity contentions fail to put RVT on notice of ABB's invalidity positions—prior to the deadline for final invalidity contentions, then ABB will be precluded from arguing that those prior-art references are invalidating unless the Court finds that ABB has good cause to amend its final disclosures. *See*, e.g., *British Telecom PLC v. IAC/Interactive Corp.*, No. 1:18-cv-00366-WCB, D.I. 210 at 13 (D. Del. June 8, 2020). Accordingly, if RVT believes that ABB is using a prior-art reference for an impermissible purpose at a later stage of the case, RVT can object to the sufficiency of ABB's disclosures at that time. Moreover, the Court is confident that RVT's objection to ABB's use of "exemplary" or "illustrative" claim charts will be resolved as the case is narrowed.[2] Thus, the Court denies RVT's motion.

---

[2] As discussed below, the Court finds that the instant action has proceeded to a stage of the case where it is appropriate for the parties to begin to reduce their initial contentions. Accordingly,

**C.     ABB's Motion to Compel RVT To Identify Additional Custodians and Produce Additional Documents.**

ABB asks the Court to compel RVT to identify additional custodians, produce documents from those custodians, and produce documents showing how RVT's paper documents are kept. D.I. 61. For the reasons stated below, the Court grants-in-part and denies-in-part ABB's motion.

### 1.     Additional Custodians

In its initial disclosures, RVT identified only one custodian, Rick Weidinger (the founder and CEO of RVT), "for all e-discovery topics." *Id.* at 1. After ABB requested that RVT identify more custodians, RVT identified another two custodians—Paul Weidinger, an "independent contractor and former RVT employee responsible for source code," and Tim Weidinger, a "present RVT employee." *Id.*

ABB filed this motion to compel RVT to identify additional custodians because the Default Standard requires RVT to identify ten custodians. Default Standard, ¶ 3(a). In response, RVT replied that it cannot identify ten document custodians because, (1) it only has two employees, and (2) "no other individual [including former employees] has possession, custody, or control of RVT documents." D.I. 63 at 1.

The Default Standard is mindful of the concept of proportionality. Default Standard, ¶ 1(b). Accordingly, a party need not identify ten custodians if it cannot identify ten individuals that are likely to have discoverable information in their possession, custody, or control. *Id.* Instead, if a party cannot identify ten custodians, that party must identify all of the individuals that it believes have some likelihood of having possession, custody, or control over discoverable

---

the Court will order the parties to meet and confer and propose a schedule and procedure for narrowing the scope of this action.

information—which should include former employees, if those employees are likely to have such information. *See Air Prod. & Chemicals, Inc. v. Wiesemann*, 2017 WL 758417, at \*2 (D. Del. Feb. 27, 2017); *Attentive Mobile Inc. v. 317 Labs, Inc.*, C.A. No. 22-1163-CJB, D.I. 112 (D. Del. Apr. 22, 2024).

Here, RVT erred in disclosing only three custodians, because RVT only disclosed the individuals that it believes are likely to be in possession, custody, or control of discoverable *documents*. *See* D.I. 63 at 1. The Default Standard is not limited to document custodians. Default Standard, ¶ 3(a). Instead, the Default Standard requires a party to identify individuals likely to possess discoverable *information*—which includes, but is not limited to, discoverable documents. *Id.* Accordingly, the Court grants ABB's motion to compel RVT to identify additional custodians because RVT has not represented that no other individuals are likely to be in possession, custody, or control of discoverable information. D.I. 63.

### 2.   Additional Documents

ABB asks the Court to compel RVT to produce "all documents describing how the documents in RVT's 'highly organized paper filing system' are organized" so that it can "understand" the documents RVT produced. D.I. 61 at 3.

RVT alleges that it does not have a "searchable electronic document management system." Instead, in the ordinary course of business, it "retains its important documents (including emails) in hardcopy in a highly organized paper filing system." D.I. 63 at 2. Accordingly, in response to ABB's request for ESI, RVT produced paper documents along with "the labels of the binders, boxes, or folders containing these documents" in "a comprehensive spreadsheet cataloging where each paper documents was kept" but did not "create a label or folder from scratch" for documents lacking such pre-existing source information. *Id.*

8

The source information in RVT's "comprehensive spreadsheet" provides little more detail than the location of where RVT apparently found the documents it produced. For example, RVT identifies Document No. RVT_0015824 as one of many "Stickley Wood Table Files." Accordingly, ABB's request for additional information regarding RVT's filing system is a reasonable request.[3] However, according to RVT, "no such document exists." D.I. 63 at 2. Thus, the Court grants ABB's motion to compel production of a document detailing how RVT organizes its paper files to the extent such a document exists. If RVT continues to assert that no such document, or additional responsive information exists, it should so certify in writing.

### D.  ABB's Motion to Limit the Number Of Claims And Compel Supplemental Infringement Contentions.

ABB asks the Court to order RVT to (1) reduce the number of asserted claims, and (2) supplement its infringement contentions. For the reasons stated below, the Court grants ABB's motion. D.I. 80.

#### 1.  Case Narrowing

ABB asks the Court to order RVT to limit its number of asserted claims because RVT has asserted 82 claims across three patents. *Id.* at 1. RVT responds that narrowing the case at this time would be premature because ABB has not produced the documents that are the subject of RVT's motion to compel. D.I. 83 at 1. However, as discussed above, the Court finds that RVT has not shown that it is entitled to discovery into those products at this time. *Supra* at § I(A). RVT also objects to the sufficiency of ABB's supplemental source code production with respect to FlexVision, but fails to explain how ABB's source code production is deficient (with the exception

---

[3] RVT's "comprehensive spreadsheet" also fails to explain the difference between the "Stickley Wood Table Files" and the "AI Agreements & Misc info on [the] Stickley end table."

of the Cognex libraries, which, as discussed above, RVT has not shown ABB has a duty to produce). *Id.*

The Court finds that narrowing the case at this time is appropriate. Fact discovery will close approximately two months from the Court's entry of this Order, *see* D.I. 48, and the Court conducted a *Markman* hearing on May 1, 2024. Accordingly, the Court hereby orders the parties to meet and confer and, by no later than May 20, 2024, to propose a joint schedule and procedure for narrowing RVT's asserted claims and ABB's prior-art references.

### 2.   Infringement Contentions

ABB asks the Court to compel RVT to supplement its initial infringement contentions because RVT's contentions state that "discovery, including source code, will show" how ABB's products infringe, without further explanation of how or why ABB's products infringe. D.I. 80 at 2-3. RVT responds that it has not been able to supplement its contentions because, as of the date that RVT filed its letter in response to ABB's motion, (1) RVT had been in possession of ABB's newly-supplemented source code for only one week, and (2) ABB had not disclosed the information that is the subject of RVT's motion to compel. D.I. 83 at 2-3.

The Court hereby orders RVT to supplement its infringement contentions. As of the entry of this Order, RVT will have been in possession of ABB's supplemental source code for approximately three months. *See* D.I. 83 at 2. Courts in this District have required plaintiffs to supplement their infringement contentions with source code citations, if available. *Kajeet, Inc. v. McAfee Corp.*, 1:21-cv-00005 (D. Del. Nov. 22, 2021) (ordering a plaintiff to amend its initial infringement contentions when source code was available); *see also Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 561 (E.D. Tex. 2005) (requiring supplementation of initial claim charts with specific references to source code within thirty days of obtaining access to source

code). Accordingly, the Court orders RVT to supplement its infringement contentions with citations to the source code. The Court finds that ABB's lack of production of documents related to its PickMaster, YuMi, Integrated Vision, 3DQI, and FlexLoader products is not a bar to RVT supplementing its disclosures because, as discussed above, RVT has not shown that it is entitled to discovery regarding those products at this time. *Supra* at § I(A).

## II.  CONCLUSION

For the foregoing reasons, this 6th day of May, 2024, **IT IS HEREBY ORDERED** that:

1.  RVT's Motion to Show Cause And Compel Document Production is **DENIED**. D.I. 60.

2.  RVT's Motion to Strike or, in the Alternative Compel Supplemental Production is **DENIED**. D.I. 81.

3.  ABB's Motion to Compel RVT to Identify Additional Custodians and Produce Additional Documents is **GRANTED**. D.I. 61.

4.  ABB's Motion to Limit the Number of Claims and Compel Supplemental Infringement Contentions is **GRANTED**. D.I. 80. RVT shall supplement its infringement contentions to include source code citations by no later than 5:00 PM on June 7, 2024.

5.  The parties shall meet and confer and, by no later than 5:00 PM on May 20, 2024, file a joint letter of no more than four (4) pages with the Court providing an agreed-upon schedule and procedure for limiting RVT's number of asserted claims and ABB's number of invalidity contentions, including the number of prior-art

references and obviousness combinations.  If the parties cannot reach an agreement regarding that schedule and procedure, then the parties' joint letter shall identify and support each parties' respective proposed schedule and procedure for narrowing the number of asserted claims and invalidity contentions in this action.

Date: May 6, 2024

GREGORY B. WILLIAMS
U.S. DISTRICT JUDGE